**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE:

APPLICATION OF PATOKH CHODIEV AND
INTERNATIONAL MINERAL RESOURCES B.V.
FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

Applicants.

Case No. 1:18-mc-00013-EGS

**REPLY IN SUPPORT OF PATOKH CHODIEV AND INTERNATIONAL MINERAL
RESOURCES B.V.'S MOTION TO COMPEL, FOR SANCTIONS AND/OR FOR A
FINDING OF CONTEMPT**

Patokh Chodiev and International Mineral Resources B.V. (collectively, "Applicants")
respectfully submit this reply brief in further support of their Motion to Compel, for Sanctions
and/or for a Finding of Contempt (the "Motion") against Respondent Joseph Szlavik, who was
properly served with the subpoena this Court authorized Applicants to issue pursuant to 28
U.S.C. § 1782 (the "Subpoena"), who owns and works as president of a company whose office is
located in Washington, D.C., but who nevertheless ignored the Subpoena until Applicants were
forced to file the present Motion.

**PRELIMINARY STATEMENT**

After two months of Mr. Szlavik evading Applicants' numerous attempts to serve him
with the Subpoena, they were finally able to serve him personally on May 2, 2018.  Thereafter,
Applicants made several good faith attempts to engage Mr. Szlavik to coordinate the timing and
manner of compliance.  Mr. Szlavik simply ignored these overtures as well as the Subpoena
itself.  (*See* Dkt. No. 12.)  Only after Applicants were forced to file the present Motion did Mr.
Szlavik surface.  Instead of providing any legitimate excuse for his evasive and dilatory tactics,

Mr. Szlavik's Opposition falsely asserts that he was not served with the Subpoena and spuriously accuses Applicants of improper conduct.  Indeed, Mr. Szlavik's Opposition is based on several asserted facts and legal arguments that are either highly misleading or outright fabrications.[1]  For the following reasons, his Opposition must be rejected.

*First*, Mr. Szlavik's assertion that he was not personally served is false.  He was personally served by Applicants' process server, Michael Talone, on May 2, 2018, in Harleysville, PA.  Mr. Talone explained to Mr. Szlavik that he was a process server and that he was present to serve Mr. Szlavik with the Subpoena, and Mr. Talone handed Mr. Szlavik a copy of the Subpoena along with a cover letter and the Order authorizing the Subpoena's issuance.

*Second*, Mr. Szlavik's argument that he is not "found in" the District of Columbia is incorrect because the undisputed evidence shows that Mr. Szlavik is the owner and works as the president of Scribe Strategies and Advisors, a company that lists its primary office as located in this District.

*Third*, Mr. Szlavik's argument that he was substantially justified in ignoring the Subpoena because the dates of compliance set forth in it and in the Order authorizing its issuance had elapsed is a bald attempt to benefit from his own wrongdoing.  The deadlines had elapsed solely because Mr. Szlavik had successfully evaded service for nearly two months.  Moreover, Mr. Szlavik ignores the cover letter served with the Subpoena, which set a three-week deadline

---

[1] There are serious reasons to question the credibility of Mr. Szlavik, a man who has been convicted of crimes in the past and who the DOJ's Money Laundering and Asset Recovery Section has recently stated it currently plans to indict for making a false statement to a U.S. customs official.  (*See* Ex. 1, *U.S. Says It Plans to Criminally Charge Gabonese President's American Lobbyist*, Reuters, Sept. 13, 2017; Ex. 2, Pa. Ct. Common Pleas Dkt.; Ex. 3, D.D.C. Dkt.).  In the event that the Court decides it needs to make credibility determinations to resolve this Motion, Applicants respectfully submit that the Court should hold an evidentiary hearing where Mr. Szlavik and the process server can testify and be subject to cross examination in person.

for document production (i.e., May 23, 2018) and a deadline of three weeks after that for a deposition (i.e., June 13, 2018).  Mr. Szlavik was in no way justified in ignoring the Subpoena.

*Fourth*, and finally, Mr. Szlavik is incorrect in arguing that Applicants' request for fees and costs should be rejected because it is unsupported and excessive.  Applicants have offered to provide an itemized list of time entries and disbursements so that the Court may fully evaluate the magnitude of the request after imposing sanctions.  Such a process is common and makes sense where, as here, the full magnitude of the fee request is unknown because fees and costs continue to be incurred to secure compliance.

## ARGUMENT

**I.     Mr. Szlavik Was Served Personally with the Subpoena, the Order Authorizing its Issuance, and a Cover Letter Specifying Deadlines for Compliance.**

Mr. Szlavik's assertions in his declaration (at ¶ 9) that, in May 2018, Applicants' process server (i) "never informed [him] that either he was a process server or that he had process or other documents to deliver" and (ii) simply "threw papers out of his vehicle window while he was driving away" are outright fabrications.

On May 2, 2018, Applicants' process server, Mr. Talone, handed Mr. Szlavik a copy of the Subpoena in the front yard of Mr. Szlavik's house in Harleysville, PA.  (*See* Dkt. No. 12, Ex. 1, Aff. of Service; Ex. 4, Talone Aff.)  Along with the Subpoena, Mr. Talone handed Mr. Szlavik a copy of the Order this Court entered authorizing issuance of the Subpoena and a cover letter setting a deadline of three weeks after service of the Subpoena for document production and a deadline of three weeks after that for a deposition.  (*See id.*)  At that time, Mr. Talone explained that he was a process server and that he was present to serve Mr. Szlavik with the Subpoena. (Ex. 4, Talone Aff.)  Thus, the Opposition is incorrect in asserting (at 10) that Applicants did not "personally serve" Mr. Szlavik.

Moreover, Mr. Szlavik's suggestion in his declaration (at ¶¶ 7, 8) that Applicants' process server acted inappropriately by (i) trespassing on Mr. Szlavik's property and then racing away "in or around February 2018," and/or (ii) attempting "to deliver something" to Mr. Szlavik's daughter who would not accept it "[w]eeks or months later" is either highly misleading or false (and irrelevant in any event).  As explained in the Declaration of Christopher Lahneman, which Applicants attached to their Motion for Alternate Service (Dkt. No. 5), Mr. Lahneman previously had attempted to serve Mr. Szlavik with the Subpoena at his house in Harleysville, PA, on several occasions, two of which vaguely resemble the incidents described by Mr. Szlavik but differ in significant ways.  (Ex. 5, Lahneman Decl. ¶¶ 5-9.)

First, on March 29, 2018, Mr. Lahneman went to Mr. Szlavik's house and observed Mr. Szlavik crack the door open for him.  When Mr. Lahneman identified himself and informed Mr. Szlavik that he was present to serve the Subpoena, Mr. Szlavik closed the door and stated that Mr. Lahneman was trespassing.  Mr. Lahneman returned to his vehicle.  When Mr. Lahneman observed Mr. Szlavik exit his residence as he drove away, Mr. Lahneman stopped the car and attempted to serve Mr. Szlavik once again.  Before he could do so, Mr. Szlavik reentered his property in an apparent effort to evade service.  (*Id.* ¶ 7.)

Second, on April 3, 2018, Mr. Lahneman returned to Mr. Szlavik's house in Harleysville, PA, accompanied by Pennsylvania State Police Trooper Andrew Merced.  Mr. Lahneman knocked on the door, and an adult woman answered.  She identified herself as Mr. Szlavik's daughter, and Mr. Lahneman left a copy of the Subpoena with her.  (*Id.* ¶ 9.)

Thus, if paragraphs 7 and 8 of Mr. Szlavik's declaration describe these two events, they are materially false.  If paragraphs 7 and 8 of Mr. Szlavik's declaration instead describe

interactions with individuals who were not acting as Applicants' process servers, they are highly misleading (and, of course, Applicants have no way of knowing about these unrelated incidents).

## II.    Mr. Szlavik Is "Found In" the District of Columbia for Purposes of Section 1782.

Mr. Szlavik's argument that he is not "found in" the District of Columbia is incorrect. Mr. Szlavik is the owner and works as the president of Scribe Strategies and Advisors ("Scribe"), a company that lists its primary office as located in the District of Columbia.  (Dkt. No. 1, Scanlon Decl., Ex. C.)  Scribe's address and a description of Mr. Szlavik's work there was taken from Scribe's own web site and attached to Applicants' 1782 Application.  (*See id.*) ("1875 Connecticut Avenue, NW, Tenth Floor, Washington, D.C. 20009"; "By 1992, Mr. Szlavik had established his own company, now known as Scribe Strategies & Advisors.")  Notably, in a filing that Mr. Szlavik made less than two months ago pursuant to the Foreign Registered Agents Act ("FARA"), Mr. Szlavik lists Scribe's address as 1875 Connecticut Avenue, NW, Washington, DC 20009, and he lists himself as the president.  (*See* Ex. 6, Scribe FARA Filing.)

Where, as here, a respondent works in the district where a 1782 Application has been filed, courts routinely find that the "found in" element of Section 1782 is satisfied.  *See, e.g.*, *In re Mangouras*, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (finding that individual lawyers were "found in" the district because they worked at law firms with offices in the district); *In re App. of the Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 487 (D. Mass. 2015) ("Dr. Douglas, according to an expert report he filed for Chevron in the Lago Agrio litigation, works in Rockland, Massachusetts. Thus, he can be 'found' in the District of Massachusetts."); *In re App. of Meydan Group LLC*, 2015 WL 2453757, at *3 (D.N.J. May 21, 2015) (finding that individuals were found in the district because they work at a company's

headquarters located there); *In re App. of Chevron Corp.*, 2010 WL 9014422, at *4 (D. Vt. Dec. 2, 2010) ("Allen works in Vermont, and thus 'is found' in this district.")

Here, Mr. Szlavik does not dispute that he works at Scribe's office, which is located in Washington, D.C.  Thus, Mr. Szlavik is "found in" the District.

Mr. Szlavik's argument that he is not "found in" the District because Applicants have not averred that he has "systematic and continuous contacts" with it and thus have not established personal jurisdiction over him is misplaced.  First, the sole case cited by Mr. Szlavik to support the proposition does *not* conclude that the tests for personal jurisdiction and Section 1782's "found in" element are coextensive; it states instead that courts employ the specific language of Section 1782 for the "found in" element and states that it overlaps considerably with the personal jurisdiction test.  *See In re App. of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 294-95 n.4.  Second, the case cited by Mr. Szlavik dealt with a corporation that had no contacts with the District of Columbia, not (like the cases above) an individual who works in the District. *See id.* at 295.  And finally, even if Section 1782's "found in" element were coextensive with the personal jurisdiction requirement (which it is not) and Mr. Szlavik would have had a basis for arguing that he is not subject to personal jurisdiction in this District (which he does not), Mr. Szlavik's contention nevertheless fails because he has waived any objections to the propriety of the Subpoena by failing to object in a timely fashion or respond to the Subpoena within the time for compliance.  *See, e.g.*, *In re App. of Grupo Mexico SAB de CV*, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015) (a party "waives objections if he/she/it fails either to serve timely objections . . . or to file a timely motion with the court . . . . This waiver applies to the defense of lack of personal jurisdiction."); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 230 (D.D.C. 2015)

(finding untimely a motion to quash in the context of a Section 1782 proceeding because it was filed after the time for compliance had elapsed).[2]

### III.   Mr. Szlavik Was Not "Substantially Justified" in Ignoring the Subpoena.

Mr. Szlavik's hyper-technical argument that the Motion should be denied on the ground that the dates set forth in the Subpoena and Order authorizing it had elapsed should be rejected as an impermissible attempt by Mr. Szlavik to benefit from his own wrongdoing.  As explained in the Motion (and in Applicant's Motion for Alternative Service), the dates in the Subpoena and Order elapsed before Mr. Szlavik was served because Mr. Szlavik evaded service for nearly two months.  (*See* Dkt. Nos. 5, 12.)  During that time, Mr. Szlavik did the following:

- Refused to authorize an attorney representing him in another matter to accept service of the Subpoena (*See* Dkt. No. 5 at 6);

- Twice retreated into his house in Harleysville, PA, when Applicants' investigator identified himself, stated that he was present to serve the Subpoena, and attempted to serve Mr. Szlavik personally (*id.* at 5); and

- Refused to respond to the Subpoena even after Applicants' process server – accompanied by a Pennsylvania State Trooper – provided a copy of it to Mr. Szlavik's adult daughter at Mr. Szlavik's Harleysville, PA, house (*id.*).

Cognizant that the dates in the Subpoena and Order authorizing it had elapsed, Applicants served Mr. Szlavik with a cover letter along with the Subpoena and Order on May 2, 2018.  (*See* Dkt. No. 12, Ex. 2.)  The cover letter set a three-week deadline for document production (i.e., May 23, 2018), and a deadline of three weeks later for a deposition (i.e., June 13, 2018).  (*Id.*)

In his Opposition, Mr. Szlavik glosses over these facts and argues instead (at 11) that he was substantially justified in ignoring the Subpoena, Order and cover letter because Applicants should have sought Court intervention once the dates elapsed.  But Applicants *did* seek Court

---

[2] In any event, if Mr. Szlavik would prefer that his deposition be taken in or around Harleysville, PA, instead of Washington, D.C., then Applicants are amenable to that.

intervention. Applicants sought permission to serve Mr. Szlavik through means alternative to personal service and an extension of time to obtain the authorized discovery from Mr. Szlavik (and Rinat Akhmetshin, the other respondent in this action). (*See* Dkt. No. 5.) The Court denied the first request but granted the second. (*See* Minute Order, Apr. 15, 2018.)

Mr. Szlavik's argument that he was substantially justified in ignoring the Subpoena, Order and cover letter also ignores that Applicants attempted to contact him to coordinate compliance even after he was personally served but before filing any motion to compel. Applicants contacted Mr. Szlavik's attorney in the other matter (again) who stated that he would ask Mr. Szlavik to contact Applicants' counsel, and Applicants even sent Mr. Szlavik a direct text message to his cell phone requesting that he contact Applicants' counsel about the Subpoena. (*See* Dkt. No. 12 at 3 & Exs. 3, 4.) He ignored both overtures.

Mr. Szlavik is incorrect in arguing (at 11) that a party must obtain and serve a new subpoena each time the original time for compliance lapses because of an accommodation by the party serving the subpoena. In *HT S.R.L v. Velasco*, for instance, a court in this District imposed fees and costs on a subpoena target in the context of a Section 1782 proceeding where the time for compliance set forth in the subpoena was May 11, 2015, the subpoena issuer provided an informal ten-day extension for compliance, but the target nevertheless failed to comply by the May 21, 2015 informal deadline. *See* 125 F. Supp. 3d 211, 217, 231 (D.D.C. 2015.)

Finally, Mr. Szlavik's argument that Applicants offer no rationale for the application of Rule 37 to violations under Rule 45 is wrong. As noted in the Motion, courts in this District award attorneys' fees for a motion to compel in the context of a Section 1782 subpoena pursuant to Rule 37(a)(5). *See, e.g.*, *id.* at 231.

**IV.     Applicants' Request for Attorneys' Fees and Costs Is Supported and Reasonable.**

Mr. Szlavik is again incorrect in arguing (at 12-14) that Applicants' request for fees and costs should be rejected because it is unsupported and excessive.  As discussed, Applicants have demonstrated that they are entitled to attorneys' fees and costs incurred in preparing the present Motion and Reply.  In addition, Applicants have offered to provide an itemized list of time entries and disbursements describing these fees and costs, so that the Court may fully evaluate the magnitude of the request after imposing sanctions.  Such a process is common in this District and makes sense, particularly where, as here, uncertainty exists as to what future fees and costs Applicants may incur in seeking compliance by, for example, the need for a reply and/or hearing. *See, e.g.*, *Velasco*, 125 F. Supp. 3d at 231 (directing the proponent of a successful motion to compel compliance with a subpoena issued in the context of a 1782 proceeding to "file an accounting of its attorneys' fees relating to the filing of the Amended Motion to Compel [and] Reply in Support of the Amended Motion to Compel . . . within ten days after the deposition has been held" and stating that the "Court will then issue a ruling accordingly").

Applicants have incurred an additional $25,769.00 in attorneys' fees and costs in preparing this Reply.  The Court should sanction Mr. Szlavik this amount plus the $17,250.50 Applicants incurred preparing the Motion – a total of $43,019.50.  (Ex. 7, Decl. of Jacob Kotler; Dkt. No. 12 at 5.)  As offered in the Motion, Applicants will provide an itemized list of time entries and disbursements describing the fees and costs incurred in preparing this Reply. Applicants believe that the Court will find these fees and costs, as well as the fees and costs associated with the Motion, to be reasonable.

## CONCLUSION

For the reasons set forth above and in the Motion, Applicants respectfully request that the

Court grant the Motion in its entirety.


Dated:          Washington, D.C.
                July 12, 2018
                                        Respectfully submitted,

                                        /s/ John Scanlon_____
                                        John ("Fritz") Scanlon (Bar ID 983169)
                                        KOBRE & KIM LLP
                                        1919 M Street NW
                                        Washington, D.C. 20036
                                        Tel:  +1 202 664 1900
                                        Fax: +1 202 664 1920
                                        fritz.scanlon@kobrekim.com

                                        Jonathan D. Cogan (admitted *pro hac vice*)
                                        800 Third Avenue
                                        New York, New York 10022
                                        Tel:  +1 212 488 1200
                                        Fax: +1 212 488 1220
                                        jonathan.cogan @kobrekim.com

                                        *Attorneys for Applicants Patokh Chodiev*
                                        *and International Mineral Resources B.V.*