**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE:<br>APPLICATION OF PATOKH CHODIEV<br>AND INTERNATIONAL MINERAL<br>RESOURCES B.V. FOR AN ORDER TO<br>TAKE DISCOVERY PURSUANT TO 28<br>U.S.C. § 1782 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:18-mc-13-EGS-RMM<br>) |

## REPORT AND RECOMMENDATION

Patokh Chodiev and International Mineral Resources B.V. ("IMR") (together

"Applicants") filed an *ex parte* application under 28 U.S.C. § 1782 seeking discovery from

Joseph Szlavik and Rinat Akhmetshin (together, "Respondents") for use in proceedings pending

in Belgium.  *See* Application for Order Under 28 U.S.C. § 1782, ECF No. 1 (the "Application").

The Court granted this application, authorizing Applicants to issue subpoenas to obtain

testimony and documents from Respondents.  *See* Order, ECF No. 4.  Now before the Court is

Respondent Rinat Akhmetshin's ("Mr. Akhmetshin's" ) Motion to Quash the subpoena

Applicants issued pursuant to the Court's Order.  *See* Mem. in Support of Mot. to Quash, ECF

No. 6-2 ("Mot.").  After considering the parties' filings[1] and the relevant law, the undersigned

recommends that the Court DENY Mr. Akhmetshin's Motion to Quash.

## BACKGROUND

The Application requests discovery from Mr. Akhmetshin concerning a "smear

campaign" in Belgium in which he allegedly hacked IMR to obtain confidential information and

---

[1] The relevant filings are: Mot. to Quash, ECF No. 6-2; Opp'n to Mot. to Quash, ECF 8-1; Reply in Support of Mot. to Quash, ECF 14-1.

"disseminat[ed] [that] information to the Belgian Parliamentary Inquiry Commission and/or the Belgian press" in an effort to damage Applicants.  Application at 1–3.[2]

This is not the first time that these parties have litigated a § 1782 claim before this Court.  In 2014, Applicants also sought discovery from Mr. Akhmetshin, then for use in a Dutch proceeding related to a separate hacking incident allegedly perpetrated by Mr. Akhmetshin on behalf of Eurochem, a Russian fertilizer company that was, at the time, in a commercial dispute with IMR in the Netherlands (the "Dutch Application").  *See* Mot. at 5–7; Opp'n to Mot. to Quash, ECF 8-1 ("Opp'n") at 4–7.  The Court granted IMR's 2014 application, and the resulting subpoena was eventually narrowed to exclude any documents postdating August 31, 2013.  *See* Mot. at 6–7.  After obtaining discovery from Mr. Akhmetshin, Applicants filed suit against him in New York state court.  *See* Mot. at 7–8.  They again alleged that Mr. Akhmetshin hacked IMR's computer systems and disseminated confidential materials he found in order to improperly influence proceedings pending in the Netherlands and to harm IMR's business reputation.  *See id.*

In early 2016, however, Applicants and Mr. Akhmetshin, along with twelve related parties, entered into a Mutual Release and Covenant Not to Sue, discharging both the § 1782 proceedings and the New York state court proceedings ("the Actions") and releasing any claims "related to the matters that are the subject of the Actions."  *See* Mot. at 8–9; Mutual Release and Covenant Not to Sue, Ex. 2, ECF No. 6-3 at 15 ("the Release").  The Release specifies that it should be construed in accordance with New York law, and it bars the parties from bringing any "rights to relief of any kind whatsoever . . . arising out of, in connection with or in any way related to the matters that are the subject of the Actions."  Release ¶¶ 3–4, 19.  As a result of the

---

[2] All citations refer to the original document pagination unless otherwise noted.

Release, the 2014 § 1782 proceeding was dismissed with prejudice by joint stipulation.  *See* Mot. at 9.

In late January 2018, Applicants filed the Application, which the Court granted, *ex parte*, authorizing Applicants to issue a subpoena to Mr. Akhmetshin directing him to produce documents and appear for a deposition.  *See* Order, ECF No. 4.  The Court also set an April 12, 2018 deadline for any motion for reconsideration of its Order.  *See* 04/02/2018 Minute Order. Mr. Akhmetshin was served with Applicants' subpoena on February 6, 2018 and responded by sending a list of preliminary objections to the Applicants on February 26, 2018.  *See* Preliminary Objections by Rinat Akhmetshin, Ex. 7, ECF No. 6-3 ("Prelim. Obj.").   But Mr. Akhmetshin did not file a motion for reconsideration.

Mr. Akhmetshin subsequently filed a Motion to Quash the Applicants' subpoena.  *See generally* Mot.  The Applicants then filed an Opposition to the Motion to Quash, and Mr. Akhmetshin filed a Reply.  *See* Opp'n to Mot. to Quash, ECF 8-1 ("Opp'n"); Reply in Support of Mot. to Quash, ECF 14-1 ("Reply").  The Court referred the Motion to Quash to the undersigned for a Report and Recommendation.  *See* 07/13/2018 Minute Order.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court is authorized, under certain circumstances, to order discovery in the United States for use in a foreign proceeding.  Courts undertake a two-step analysis when determining whether to grant an application for—or a motion to quash or enforce a subpoena issued to obtain—such discovery.  *In re Veiga*, 746 F. Supp. 2d 8, 16-17 (D.D.C. 2010) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)). First, the court determines whether it has the authority to grant the application under the express terms of § 1782.  *See id.; HT S.R.L. v. Velasco,* No. MC 15-664 (RBW), 2015 WL 13759884, at

*3 (D.D.C. Nov. 13, 2015) (analyzing the Court's statutory authority and the *Intel* factors to

determine whether a subpoena issued under § 1782 should be enforced); *In Re Application of*

*Pola Mar., Ltd.*, No. CV 416-333, 2017 WL 3714032, at *2-3 (S.D. Ga. Aug. 29, 2017)

(analyzing the statutory elements and the *Intel* factors when determining whether a subpoena

issued under § 1782 should be quashed).  A court has statutory authority to grant a § 1782

application if three conditions are met: "(1) the person from whom discovery is sought must

reside in or be found within the district; (2) the discovery must be for use in a proceeding before

a foreign or international tribunal; and (3) the application must be made by a foreign or

international tribunal or any interested person."  *In re Application of Masters for an Order*

*Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F.

Supp. 3d 269, 273 (D.D.C. 2018) (quoting *In re Application of Leret*, 51 F. Supp. 3d 66, 70

(D.D.C. 2014)).  If an application meets these criteria, the court then determines whether it

should exercise its discretion and grant the application, applying the factors articulated in *Intel*

*Corporation v. Advanced Micro Devices, Inc.* to guide its analysis.  *See Lazaridis v. Int'l Ctr. for*

*Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 114 (D.D.C. 2011), *aff'd sub nom. In*

*re Application for an Order Pursuant to 28 U.S.C. 1782*, 473 F. App'x 2 (D.C. Cir. 2012) (citing

*Intel Corp.*, 542 U.S. at 264-65).  If the court finds these factors warrant exercising its discretion

to grant a § 1782 application, the court may authorize the applicants to issue a corresponding

subpoena.

## DISCUSSION

Mr. Akhmetshin makes two main arguments for quashing Applicants' subpoena.  First,

he asserts that the Release prohibits the discovery Applicants seek.  Second, he asserts that the

Application was erroneously granted and asks the Court to vacate the Order granting the

Application for three reasons: (1) the Court did not have the required statutory authority to grant the Application because the Application did not satisfy the requirements of § 1782; (2) the *Intel* factors counsel against granting the Application, particularly because Applicants released any entitlement to the discovery sought in the subpoena by agreeing to the Release; and (3) the Application was not made in good faith.  *See* Mot. at 13-30.  Mr. Akhmetshin also requests reimbursement for the costs related to this proceeding, and, if compliance with the subpoena is required, that Applicants be ordered to pay an advance to protect Mr. Akhmetshin from incurring additional expenses.  *See* Mot. at 31-35.  The undersigned will address each argument in turn.

## I. This Court Is Not the Proper Forum to Determine Whether the 2016 Release Bars the Discovery Sought in the Application

Mr. Akhmetshin's first challenge to the subpoena invokes the Release, which he contends explicitly forecloses Applicants' discovery requests.  By signing the Release, the parties "release[d] and forever discharge[d] and fully and finally settle[d]" any and all claims "arising out of, in connection with or in any way related to the matters that are subject of the Actions." Release at ¶ 2.  The covenant not to sue is slightly broader in that the parties agreed not to "sue" or "commence" any "proceeding concerning the Released Claims."  Release at ¶ 4. While it is not obvious that the Release forecloses the Applicants' requested discovery, this Court need not reach the question; the parties contracted to place that decision in the hands—and under the laws—of the courts of New York.  *See* Opp'n at 9–10.

The Release contains both a forum-selection and a choice-of-law provision.  The forum-selection clause states that the parties "irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York," or to the New York Supreme Court for New York County, should the federal court lack subject matter jurisdiction, to "determine *any dispute* arising under or *related to* [the Release] . . . ."  Release ¶ 19 (emphasis

added).  The choice-of-law provision similarly states that "any dispute or claim arising out of

[the Release] or in connection with it or its subject matter, existence, negotiation, validity,

termination or enforceability (including non-contractual disputes or claims) shall be governed by

and construed in accordance with the laws of the State of New York . . . ."  *Id.*

Before evaluating whether and how the forum-selection clause applies to this § 1782

proceeding, it is necessary to determine what law governs that analysis.  The D.C. Circuit has not

addressed which law courts should apply when reviewing a forum-selection clause from a

contract that also contains a choice-of-law provision.  Other courts faced with the issue have

taken varied approaches.  The Second Circuit has held that federal law should be used to

determine whether the enforcement of a forum-selection clause would be unjust or unreasonable

under the standards articulated in *M/S Bremer v. Zapata Off-shore Co*.  *See Phillips v. Audio*

*Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) (*citing M/S Bremen v. Zapata Off–Shore Co.*, 407

U.S. 1, 15 (1972)).  That court suggested that it might be prudent to apply the law of the forum in

the choice-of-law provision to "interpret the meaning and scope of a forum-selection clause," but

it ultimately relied on federal law given the parties' failure to invoke the foreign law selected in

the contract's choice-of-law clause.  *See id.* at 384-86; a*ccord John Wyeth & Brother Ltd. v.*

*CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir.1997) (Alito, J.) (applying general contract law

principles to interpret forum-selection clause where parties made little reference to English law

in their briefing or arguments).  The Seventh Circuit has held that "simplicity argues for

determining the validity and meaning of a forum selection clause . . . by reference to the law of

the jurisdiction whose law governs the rest of the contract in which the clause appears."  *Abbott*

*Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007).   It is unnecessary to decide

whether New York or federal law should govern the court's assessment of the meaning, scope,

and enforceability of the forum-selection clause at issue here, because New York follows the federal standard established in *Bremen* to evaluate the enforceability of forum-selection clauses, and there appears to be no meaningful difference between how federal and New York courts determine whether such clauses are mandatory or apply to the dispute at issue. *See, e.g.*, *Brooke Group v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (N.Y. 1996); *Misako Yoshida v. PC Tech U.S.A. & You-Ri, Inc.*, 22 A.D.3d 373, 803 N.Y.S.2d 48, 49 (App. Div. 1st Dep't 2005); *Micro Balanced Prod. Corp. v. Hlavin Indus. Ltd.*, 238 A.D.2d 284, 285, 667 N.Y.S. 1 (1st Dep't 1997). Further, the parties cite federal precedent and thus presumably consent to its application. *See Phillips,* 494 F.3d at 386 (applying federal precedent because the parties did not rely on foreign law or affirmatively suggest its application would alter the analysis); *see also Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law.") (internal quotations omitted). As such, the analysis below will use federal legal standards to evaluate the scope and enforceability of the Release's forum-selection clause.

Courts adhere to the parties' choice of forum if a forum-selection clause is "applicable, mandatory, valid, and enforceable." *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 876 (D.C. Cir. 2019). "A clause is applicable if its scope encompasses the dispute, which [courts] assess using normal principles of contract interpretation." *Id.*; *see also DeSola Group. v. Coors Brewing Co.*, 199 A.D.2d 141, 141, 605 N.Y.S.2d 83 (1st Dep't 1993) (looking to the plain terms of the relevant provision to determine whether it was applicable). A "mandatory" clause is one that "requires that litigation proceed in a specific forum." *Azima*, 926 F.3d at 876; *see also Brooke Group*, 87 N.Y.2d at 534 (reasoning a forum-selection clause was not mandatory because the "plain meaning of the words used by the parties . . . [did] not manifest an intention to limit

jurisdiction to a particular forum."). A forum-selection clause is *prima facie* valid and enforceable, unless it is shown to be unreasonable, unjust, in contravention of public policy in the forum state, or would deny the resisting party a remedy or their day in court. *See id.* at 874-75 (citing *M/S Bremen*, 407 U.S. at 10-12, 15, 18); *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 117-18 (D.D.C. 2008) (citing the *Bremen* factors); *Puleo v. Shore View Ctr. for Rehabilitation & Health Care*, 132 A.D.3d 651, 652 (2d Dep't 2015).

### A.    The Forum-Selection Clause Is Mandatory and Applicable

The forum-selection clause is both mandatory and applicable. It is mandatory because it makes the Southern District of New York, or the New York County Supreme Court, the *exclusive* jurisdictions for resolving disputes related to the Release. *See Azima,* 926 F.3d at 876; *Micro Balanced Prod.*, 238 A.D.2d at 285; *see also* Release ¶ 19. It is applicable because its broad incorporation of any dispute "related" to the Release brings Mr. Akhmetshin's Release-based defense within the scope of the forum-selection clause. Forum-selection clauses that apply to disputes related to or "arising in relation to" an agreement have a broad scope. *Worldwide Network Servs.*, 496 F. Supp. 2d at 63 (citing *John Wyeth*, 119 F.3d at 1074); *see also Azima,* 926 F.3d at 877 (equating the phrases 'in connection with' and 'in relation to' when defining the scope of a forum-selection clause). When a dispute "has some logical or causal connection" to a contract, it is "related" to that contract; in other words, the dispute could arise from the agreement itself, its subject matter, or its formation. *Azima,* 926 F.3d at 877–78 (citing *John Wyeth.*, 119 F.3d at 1074). This is true even when the "dispute" arises in a proceeding in which a contract is invoked as a defense. *John Wyeth*, 119 F.3d at 1076 (holding that the phrase "any dispute . . . 'arising… in relation to' " a contract "easily encompasses a dispute in which [a settlement agreement] is raised as a defense."). Here, Mr. Akhmetshin uses the Release as a

shield, arguing that it protects him from complying with any discovery requests.  *See generally*

Mot. at 13–18.  His defense clearly has a logical relation to the subject matter of the Release, as

it is based on the text of the document.  Given that Mr. Akhmetshin's defense is within the scope

of the forum-selection clause, so long as the forum-selection clause is enforceable, only New

York state or federal courts may decide whether Applicants' discovery requests violate the

Release and whether Mr. Akhmetshin is entitled to relief.

> ### B.    Enforcing the Forum-Selection Clause Would Neither Contravene Public Policy nor Deprive Mr. Akhmetshin of All Remedies

To overcome the presumptive validity of forum-selection clauses, a party resisting

enforcement must show that the clause is unreasonable or unjust, contravenes public policy in

the forum state, or would effectively deny the party a remedy or its day in court.  *See, e.g.*,

*Cheney*, 583 F. Supp. 2d at 117–18 (citing *M/S Bremen*, 407 U.S. at 10–12, 15, 18).  Mr.

Akhmetshin claims that enforcing the forum-selection clause would deprive him of a remedy and

contravene long established public policies of the United States.  *See* Reply at 11.  If proven,

both assertions could provide grounds to deem the forum-selection clause unenforceable.  *See*

*Marra v. Papandreou*, 59 F. Supp. 2d 65, 70 (D.D.C.1999), *aff'd*, 216 F.3d 1119 (D.C. Cir.

2000); *see also British W. Indies Guar. Trust Co. v. Banque Internationale A Luxembourg*, 234,

567 N.Y.S.2d 731 (1st Dep't 1991).  But Mr. Akhmetshin has not met the "heavy burden of

proof" required to do so.

Mr. Akhmetshin contends that enforcing the forum-selection clause "effectively

deprive[s] [him] of a remedy" because it would limit his ability to quash Applicants' subpoena.

Reply at 11.  Mr. Akhmetshin claims the covenant not to sue and mutual release provisions

within the Release, which he characterizes as "hard-won" remedies, directly foreclose this

discovery.  *Id.*  He also notes that this Court alone has the authority to quash Applicant's

subpoena, and that he could not obtain that relief in proceedings before a New York court.  *Id.* (citing Fed. R. Civ. P. 45 (d)(1), (d)(3)(A), (d)(3)(B)).

Allowing New York courts to resolve the parties' dispute about the scope of the Release would not necessarily deprive Mr. Akhmetshin of any potential remedy from this Court.  He could ask this Court to stay his obligation to respond to the subpoena pending the resolution of proceedings in New York.  If this Court entered a stay, Mr. Akhmetshin could renew his motion to quash after obtaining a favorable ruling in New York.  Thus, enforcing the forum-selection clause would simply delay Mr. Akhmetshin's ability to obtain the relief he seeks.

Even if the Court does not stay Mr. Akhmetshin's obligation to respond to the subpoena, he could nonetheless obtain a remedy in proceedings before a New York court.  The fact that New York courts may lack the power to directly quash Applicants' subpoena does not mean that they would be unable to craft any remedy.  "Ordinarily, a forum selection clause is respected even if the forum state would substitute its own remedy, so long as the chosen forum will itself provide an *adequate* remedy."  *Huffington v. T.C. Group*, *LLC* 637 F.3d 18, 25 (1st Cir. 2011) (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998)) (emphasis in original); *see also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016) ("But it is the *availability* of a remedy that matters . . .  And the fact that *certain types of remedies* are unavailable does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek *some* relief.") (emphasis in original).  In New York proceedings, Mr. Akhmetshin could argue that Applicants' pursuit of this discovery violated the Release and seek monetary relief as compensation for the time and expenses incurred complying with the subpoena.  A New York court might also fashion an injunctive remedy that would give

Applicants a strong incentive to withdraw their Application.  In sum, enforcing the forum-selection clause simply hinders Mr. Akhmetshin's ability to pursue his chosen remedy at this time—an order from this Court quashing Applicants' subpoena—but does not bar him from recovering *any* remedy.  Thus, he has not demonstrated that the forum-selection clause would deprive him of his day in court.

Next, Mr. Akhmetshin contends that enforcing the forum-selection clause would contravene public policy.  "A contractual choice-of-forum provision should be held unenforceable if enforcement would contravene strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *M/S Bremen*, 407 U.S. at 15.  Only "some compelling and countervailing reason" will excuse enforcement of a bargained-for forum-selection clause.  *Id.* at 12.  Mr. Akhmetshin points to: (1) public policy protecting third parties from undue burdens of discovery and unreasonable costs, specifically the burden of traveling to another jurisdiction; and (2) public policies in favor of settling disputes and preserving judicial economy.  Those are general public policy goals that are not tied to a specific forum, which differ from the policy interests involving unique features of forum law that are normally considered under *M/S Bremen*.  *See generally*, *Yei A. Sun,* 901 F.3d at 1089 (discussing Washington's interest in enforcing a state statute); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1291–96 (9th Cir. 1998) (en banc) (analyzing federal interest in enforcing federal securities law as compared to in the Courts of England and Wales); *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006) (addressing arguments that public policy arising from Arkansas law counseled against enforcing a forum-selection clause requiring litigation in Florida).  But even if the identified public policies are appropriately considered under *M/S Bremen*, neither overcomes the presumed enforceability of the Release's forum-selection clause.

Mr. Akhmetshin contends that requiring him "to travel to over 200 miles to New York to enforce the Mutual Release, as Applicants contend is required, would patently offend the public policies codified in § 1782."  Reply at 12.  Enforcing a forum-selection clause will almost always cause some inconvenience and burden, as it likely will require at least one party to travel to and bring proceedings in a different jurisdiction.  That does not overcome the strong presumption that forum-selection clauses should be enforced.  *See M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 753 (8th Cir. 1999) ("[I]nconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause.") (internal citation omitted).  While being forced to bring ancillary claims in New York will undoubtedly burden both parties, they directly bargained for this outcome by signing onto such a broad forum-selection clause.  Given that Mr. Akhmetshin invoked the Release as a shield against the subpoena, he should not be permitted to pick and choose the portions of the Release that he wishes to enforce.

Mr. Akhmetshin's appeal to the public policy favoring judicial economy is equally unpersuasive.  It is true that judicial economy counsels against duplicative parallel proceedings.  *See Nat'l Org. for Women v. Operation Rescue,* 37 F.3d 646, 651 (D.C. Cir. 1994) ("The policies of judicial economy, convenience, and fairness to litigants are served by allowing the appellees to seek a single injunction based on both federal and local law claims arising out of a single set of facts and events, rather than pursuing parallel actions in both federal and District of Columbia courts."); *Andrade v. Lauer*, 729 F.2d 1475, 1489 (D.C. Cir. 1984) ("Judicial economy will be served by avoiding duplicative proceedings . . . ."); *National Family Planning & Reproductive Health Ass'n v. Sullivan*, Civ. Act. No. 92-2177, 1992 WL 345629 at *2 (D.D.C. Oct. 5, 1992) ("This principle of judicial comity is derived from the policies favoring the conservation of judicial resources as well as providing for the comprehensive disposition of litigation before the

12

federal courts.") (internal citation omitted)).  But allowing Mr. Akhmetshin to litigate matters related to the Release—governed by New York law—in New York and matters related to § 1782 in this Court would not be duplicative.  This outcome conserves court resources, honors the parties' agreement, and preserves Mr. Akhmetshin's right to relief if the subpoena violates the Release.

### C.   *Estoppel Does Not Preclude Applicants from Invoking the Forum-Selection Clause*

Mr. Akhmetshin also argues that Applicants should be judicially and equitably estopped from invoking the Release's forum-selection clause.  *See* Reply at 10–11.  Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).  Under the doctrine of equitable estoppel: " 'a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.' " *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 55 (D.D.C. 2009) (citing *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212 (D.C. 2002) (internal citation omitted).

Mr. Akhmetshin fails to demonstrate that Applicants engaged in behavior that would trigger judicial estoppel.  Applicants maintain—and have always maintained—that the Release is completely inapplicable to the current discovery.  They raised the forum-selection clause only in response to Mr. Akhmetshin's assertion that the Release bars the discovery sought in the disputed subpoena.  Thus, Applicants' assertion that only New York courts may interpret the Release's scope is not a change of position, let alone the type of change that would judicially estop them from raising this argument.  As such, judicial estoppel should not bar Applicants' invocation of the Release's forum-selection clause.

Mr. Akhmetshin's equitable estoppel argument is equally unpersuasive.  To successfully invoke that doctrine, Mr. Akhmetshin must demonstrate that Applicants accepted the benefit of a contract, statute, regulation or order and are now taking an inconsistent position to avoid "the corresponding obligations or effects" of it.  *Carrol*, 636 F. Supp. 2d at 55.  Although Mr. Akhmetshin has not identified what conduct underlies the equitable estoppel argument, he appears to take issue with the purported inconsistency between Applicants' invocation of § 1782 to file the Application in this Court and their assertion that the Release's forum-selection clause requires the dispute about whether the Release bars the subpoena to be resolved by a New York federal or state court.  Applicants filed the Application in this District, presumably because § 1782 requires that such applications be filed where the respondent resides or can be found.  As noted above, Applicants contend that the Release does not bar the discovery sought in the Application, and they only raised the Release's forum-selection clause in response to Mr. Akhmetshin's contrary assertion.  There is no basis to find that Applicants took that position to avoid their obligations under § 1782 or the statute's venue requirements.  Consequently, equitable estoppel does not preclude Applicants from invoking the forum-selection clause.

For the foregoing reasons, the undersigned recommends that the Court apply the forum-selection clause and decline to reach the merits of the arguments for quashing the subpoena that are based on the Release.  Mr. Akhmetshin may initiate proceedings in New York if he believes that the Application violates the negotiated terms of the Release and may seek relief from that forum if he prevails.[3]

---

[3] As noted above, a stay of Mr. Akhmetshin's obligation to respond to the subpoena could preserve Mr. Akhmetshin's ability to obtain a ruling from this Court after the conclusion of New York proceedings.  A further inquiry would be necessary to assess whether this proceeding should be further delayed for that reason.

14

**II. There Is No Basis to Vacate the Order Granting the § 1782 Application**

The motion to quash also collaterally attacks the Court's February 2, 2018 Order granting the Application. Although Mr. Akhmetshin did not move for reconsideration by the April 12, 2018 deadline to do so,[4] he now urges the Court to "exercise its broad reservoir of discretionary powers to vacate its February 2 Order and deny the Application." Mot. at 27. Specifically, Mr. Akhmetshin contends that: (1) the Court lacked authority to issue the Application because Applicants did not show that the discovery was "for use" in a foreign proceeding; (2) even if the Court had authority to grant the application, it should exercise its discretion to deny the Application as "improvidently granted;" and (3) Applicants sought the Application in bad faith. Mot at 18–32. None of these arguments presents a sound basis for the Court to reconsider and reverse its prior order granting the application.

### A.   The Court Had the Authority to Grant the Application Under § 1782

A court may grant a § 1782 application if: (1) the person from whom discovery is sought resides in the district, (2) the requested discovery is "for use in a proceeding in a foreign or international tribunal," and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a); *see also In re Application of Masters*, 315 F. Supp. 3d at 273. Mr. Akhmetshin concedes that he resides in the district, but contends that Applicants have failed to demonstrate that the requested discovery is "for use" in a foreign proceeding, and that the Court therefore lacked statutory authority to grant the Application. Mot. at 23-24.

---

[4] After granting IMR and Mr. Chodiev's *ex parte* § 1782 application and authorizing Applicants to issue a subpoena to Mr. Akhmetshin on February 2, 2018, the Court set a deadline of April 12, 2018 for Respondents to file a Motion for Reconsideration. 04/02/2018 Minute Order.

To meet the "for use in a proceeding in a foreign or international tribunal" requirement, Applicants must establish that they intend to use the discovery in a foreign or international proceeding and that the discovery is relevant to that proceeding.  *In re Veiga*, 746 F. Supp. 2d at 18.  Section 1782 "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings."  *Intel*, 542 U.S. at 258; s*ee also Lazaridis*, 760 F. Supp. 2d at 112 (citing *Intel*, 542 U.S. at 253–54) ("[T]he Supreme Court has made clear that an adjudicative proceeding need be neither pending nor imminent 'for an applicant to invoke § 1782(a) successfully[.]'").  Instead, "to fall within the scope of § 1782(a), a [foreign] proceeding need only be 'within reasonable contemplation.'"  *In re Veiga*, 746 F. Supp. 2d at 23 (citing *Intel*, 542 U.S. at 259).

Applicants seek discovery from Mr. Akhmetshin regarding his alleged role in illegally obtaining confidential materials from IMR and disseminating that information to members of the Belgian Parliament and the Belgian press to damage IMR and Mr. Chodiev's reputation.  *See* Application at 1–2.  Applicants intend to use the discovery in both pending and future adjudicative proceedings in Belgium.  *See* Application at 1–2, 11–13.  The pertinent proceedings are lawsuits that Mr. Chodiev has filed—or will file—in Belgium seeking damages from the Belgian government and two members of the Belgian Parliamentary Inquiry Commission. Application at 1–2; Second Ehrensberger Decl. ¶¶ 7-10, ECF No. 8-5.  At least one of Applicants' claims is pending in the Court of First Instance of Brussels, Belgium, which several courts have recognized as a "foreign tribunal" for the purposes of § 1782.  *See, e.g.*, *Jankovic v. Int'l Crisis Grp*., 494 F.3d 1080, 1085 (D.C. Cir. 2007) (discussing litigation filed in the Belgian courts of First Instance); *In re Stati*, 15-MC-91059, 2018 WL 474999, at *2, *4 (D. Mass. Jan. 18, 2018) (finding the Belgian courts of First instance to be adjudicative foreign tribunals); *see also* Second Ehrensberger Decl. ¶¶ 7-10.  As Applicants have identified both actual and

16

contemplated proceedings, they easily satisfy the first part of the "for use in a foreign proceeding" requirement.

Applicants also have adequately shown that the proposed discovery is relevant to those foreign proceedings. The statute requires only a *"de minimis"* showing of relevance, "broadly construed," and, when in doubt, courts should err on the side of overinclusion. *In re Veiga*, 746 F. Supp. 2d 8, 17–19 (D.D.C. 2010). Applicants assert that the discovery sought from Mr. Akhmetshin would be used in the current and contemplated Belgian proceedings to "help Mr. Chodiev and IMR prove that members of the Parliamentary Commission are improperly colluding with the press or other outsiders in a fashion that has damaged Mr. Chodiev and IMR." Application at 2. In response, Mr. Akhmetshin argues that Applicants have "failed to present a plausible connection between Mr. Akhmetshin and the Belgian Proceedings for which they claim to require discovery," and that Applicants have therefore failed to meet the "for use" requirement of § 1782. Mot. at 24–26. Applicants submitted several declarations detailing how they plan to use the discovery in the Belgian proceedings. *See generally* Hutman Decl., ¶¶ 6, 11, 14, ECF No. 1-7; First Ehrensberger Decl. ¶ 16, ECF No. 1-11; *see also* Opp'n at 12–13. The allegations connecting Mr. Akhmetshin to the smear campaign in Belgium satisfy Applicants' "*de minimis*" burden to show the requested discovery is relevant to the foreign proceedings. *In re Veiga*, 746 F. Supp. 2d at 17–19. Despite Mr. Akhmetshin's claims that Applicants' requests are based on hearsay and inconclusive conjecture, this Court need not weigh the evidentiary value of the information Applicants seek. The Court need only satisfy itself that the information has some relevance to foreign proceedings, which it evidently does. *Id.* at 24 ("Where the relevance or admissibility of the evidence sought is sharply disputed, courts are free to rely on the statute's

overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application and deferring to the foreign tribunal on contested issues.").

As for the third requirement —that the application be made by an "interested person" —Mr. Akhmetshin asserts that he "can neither concede nor deny" that Applicants are interested persons under the meaning of the statute.  Mot. at 23.  "[T]he phrase 'any interested person' is also interpreted broadly and may encompass those who 'prompt[ ] an investigation,' i.e., a complainant, who 'have a right to submit information' and who 'possess a reasonable interest in obtaining [judicial] assistance.'"  *Lazaridis*, 760 F. Supp. 2d at 113 (citing *Intel*, 542 U.S. at 256).  Based on Applicants' representations to the Court discussed above, they qualify as "interested persons" in the foreign proceedings.

Given that Applicants have met each element of § 1782, the Court had the authority to grant the Application.  The undersigned therefore recommends that the Court reject Mr. Akhmetshin's challenge to the Court's authority to issue the Application.[5]

**B.    Applying the Intel Factors Demonstrates that the Court Acted Well Within Its Discretion When It Granted the Application**

Once the initial requirements of § 1782 are met, district courts have "considerable discretion to grant a § 1782 application.  *In re Application for an Order Pursuant to 28 U.S.C. 1782*, 473 F. App'x 2, 3–4 (D.C. Cir. 2012) (citing *Intel*, 542 U.S. at 264).  The Supreme Court has identified several factors courts may consider when exercising this discretion, including (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"

---

[5] In his reply, Mr. Akhmetshin vaguely suggests that the 2018 Application and subpoena alone must establish the Court's authority to allow discovery under § 1782 and that Applicants cannot rely on "*post hoc* justifications."  *See* Reply at 2–3.  Applicants' response to Mr. Akhmetshin's arguments are not fairly construed as *post hoc* justifications.  Regardless, the Application, its supporting documents, and the Subpoena itself are sufficient to meet the statutory requirements.

(2) "the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery request is "unduly intrusive or burdensome." *In re Application of Masters*, 315 F. Supp. 3d at 273 (internal citation omitted). Mr. Akhmetshin asks the Court to reweigh the *Intel* factors and vacate the order granting the Application.

Under the first factor, the need for § 1782 assistance is stronger when the party from whom discovery is sought is a nonparticipant in the foreign proceedings. *Intel*, 542 U.S. at 264. Indeed, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. Mr. Akhmetshin acknowledges that he "is not a party to the foreign proceedings, and has no role whatsoever in the Belgian proceedings." Mot. at 28. The first factor, therefore, weighs in favor of granting the Application.

The second *Intel* factor requires courts to consider the nature and character of the foreign proceedings, as well as their receptivity to the discovery sought. Mr. Akhmetshin faults Applicants for allegedly failing to identify the nature of the foreign tribunal. Mot. at 28–29. But Applicants have explained that Mr. Chodiev's legal actions in Belgium are adjudicative in nature and are pending before the Court of First Instance in Belgium. *See* Second Ehrensberger Decl. ¶¶ 7-10. Mr. Akhmetshin has not explained how the nature of those proceedings work to defeat the Application. Furthermore, Mr. Akhmetshin, as "[t]he party resisting discovery, "must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought." *In re Veiga*, 746 F. Supp. 2d at 23-24 (citing *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp.

2d 101, 105-06 (D.D.C. 2010)).  There is no basis to believe that any court in Belgium would

reject the information that Applicants seek.  Accordingly, the second factor weighs in favor of

granting the Application.  *See generally In re Stati*, 2018 WL 474999, at *7 (granting application

for discovery for use in proceedings before the Belgian courts of First Instance).

The third factor directs courts to determine "whether a § 1782(a) request conceals an

attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country

or the United States."  *Intel*, 542 U.S. at 265.  Mr. Akhmetshin contends that the Application

"has been used to circumvent the U.S. policy that favors the enforcement of settlement

agreements."  Mot. at 28–29.  However, as discussed above, enforcing the settlement in its

entirety counsels in favor of applying the forum-selection clause and allowing New York courts

to resolve the parties' dispute about the scope of the Release.  As this Court is not the proper

forum to interpret the Release, there is no clear basis to conclude that the Application

contravenes the parties' release of certain claims.  As such, the third *Intel* factor weighs in favor

of permitting discovery.

The fourth *Intel* factor evaluates the scope of the requested discovery, particularly its

burdensomeness or intrusiveness.  *In re Veiga*, 746 F. Supp. 2d at 25 (citing *Intel*, 542 U.S. at

264-65).  This factor weighs in favor of granting the § 1782 application where the "subject

matter of the requests are reasonably tailored to speak to the claims and defense raised in the

proceedings at issue."  *Id*.; *cf. Intel*, 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests

may be rejected or trimmed.").  Mr. Akhmetshin argues that this factor favors quashing the

subpoena because the requested discovery is duplicative of discovery that he already produced in

response to Applicants' 2014 § 1782 request and is therefore "cumulative, overbroad, and unduly

burdensome."  Mot. at 20–22, 29–30.

Applicants counter that the requests are not duplicative—as they inquire into a completely separate incident, at a different time, relevant to a different smear campaign—and that they have negotiated with Mr. Akhmetshin's counsel to narrow the subpoena[6] to avoid duplicating prior discovery and reduce the burden imposed by the subpoena. *See* Opp'n at 6–7, 16-18. Mr. Akhmetshin's arguments simply reiterate, in different ways, that providing discovery will impose a burden on him and that he should not be required to submit to discovery at all. Such generalized appeals to the burden of discovery do not demonstrate that discovery is *unduly* burdensome. *See, e.g.*, *DL v. D.C.*, 251 F.R.D. 38, 43 (D.D.C. 2008); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 10 (D.D.C. 2007) (internal citations omitted); *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

Given that the *Intel* factors do not weigh against Applicants' discovery, the undersigned recommends the Court reaffirm that it acted well within its "considerable discretion" when it granted the § 1782 Application and authorized the Applicants to issue a subpoena to Mr. Akhmetshin. *In re Application*, 473 F. App'x at 3–4 (citing *Intel*, 542 U.S. at 264).

### C. There Is No Basis to Find that Applicants Filed the Application in Bad Faith

Mr. Akhmetshin also argues that the Application should be retroactively denied, and that Applicants' subpoena should therefore be quashed, because Applicants showed bad faith in their initial Application. Mr. Akhmetshin relies on a Second Circuit case that holds that "if a § 1782 application is made in bad faith . . . the court is free to deny the application *in* toto, just as it can

---

[6] Applicants, "in an effort to reduce the burden on Mr. Akhmetshin and to clarify that the subpoena in no way seeks documents and/or information that are duplicative of what was sought in the previous Section 1782 application filed by IMR . . . propose[d] narrowing the subpoena's document request" and offered to consider further narrowing if Mr. Akhmetshin "believes that the reduced scope is still unduly broad, overly burdensome or otherwise objectionable." Opp'n Ex. 2, ECF No. 8-4.

if discovery was sought in bad faith in domestic litigation." *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015).  The Application references the earlier § 1782 proceedings between the parties, but does not mention the Release that ended those proceedings.  *See* Application at 8.  Mr. Akhmetshin argues that this omission renders the § 1782 application "woefully inadequate," and asks the Court to reverse its decision in accord with precedent in which courts have quashed subpoenas where the underlying "*ex parte* § 1782 applications [were] lacking in candor."  Mot. at 19–20.

The cases in which a lack of candor warranted quashing a subpoena are readily distinguishable.  Mr. Akhmetshin cites *In re WinNet R CJSC* for the fact that the court granted a motion to quash after finding that a "full and fair description of the pertinent litigation [in the § 1782 application] may very well have led the court to deny the application."  2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017).  But in that case, the court specifically noted that it quashed the subpoena because the applicant did not disclose that its underlying claims had been "repeatedly rejected" by foreign courts and that it had in fact abandoned one of the foreign claims for which it sought discovery under § 1782.  *Id.* at *5, 9.  In *Green Dev. Corp S.A. De C.V. v. Zamara*, the court quashed a subpoena granted pursuant to a § 1782 application where the court later learned that while the application was pending, the applicant filed two additional § 1782 applications in two different districts seeking the similar discovery, one of which had already been denied.  2016 WL 2745844, at *2 (S.D. Fla. May 10, 2016).  And in *Ex Parte Gov't of the Lao People's Democratic Republic*, the third case cited by Mr. Akhmetshin, a court quashed a subpoena granted pursuant to a § 1782 application after learning that the applicants had filed a similar application in a different district "seeking nearly the same discovery, on the same grounds," that had subsequently been denied.  2017 WL 2838051, at 5 (D. Idaho June 30, 2017).  Mr.

Akhmetshin has not demonstrated that Applicants engaged in conduct that rises to the level of the examples in the cited opinions.

Indeed, given Applicants' position that the Release is completely inapplicable to the requested discovery, their failure to mention the Release when they filed the Application does not reflect bad faith. To the contrary, Applicants have expressed their willingness to work with Mr. Akhmetshin to ensure that the requested discovery does not violate the terms of the Release and is as minimally burdensome as possible. *See* Opp'n Ex. 2, ECF No. 8-4. Accordingly, the undersigned recommends that the Court decline Mr. Akhmetshin's request to revisit and deny the Application based on Applicants' purported lack of good faith.

### III. Mr. Akhmetshin's Request for Fees and Costs Is Premature

Finally, Mr. Akhmetshin argues that under Federal Rule of Civil Procedure 45, IMR and Mr. Chodiev should be ordered to reimburse his costs related to this proceeding. *See* Mot. at 31–32. Mr. Akhmetshin also argues that if compliance with the subpoena is required, Applicants should be ordered to "pay into Court an escrow amount adequate to cover those expenses before any further discovery or relief will be granted to them," and he proposes an amount of $50,000. Mot. at 31–35. Mr. Akhmetshin claims that he has incurred approximately $70,000 in expenses, and he notes that the Applicants have already paid Mr. Akhmetshin $42,921 for these expenses. *See* Mot. at 33–34.

Applicants have stated that they "will comply with their reimbursement obligations under Rule 45," and have already shown a willingness to reimburse Mr. Akhmetshin's expenses by paying $42,921. Opp'n at 19. It makes little sense for the Court to award Mr. Akhmetshin anticipatory fees at this point, nor is there any justification to require Applicants to pay that amount into an escrow account. Even if the Court were inclined to award such relief, Mr.

Akhmetshin has failed to provide any documentation of his expenses that would allow the Court to engage with this issue.  The undersigned therefore recommends the Court decline Mr. Akhmetshin's invitation to award fees at this juncture, and permit him leave to revisit the issue in the future, should it become necessary.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the Court DENY Respondent Rinat Akhmetshin's Motion to Quash.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: __May 14, 2021__                                    Signed: _____

                                                                                Robin M. Meriweather
                                                                                United States Magistrate Judge